**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Harlen Ray EVANS, Defendant–Appellant.**

**No. 92–6256.**

United States Court of Appeals, Tenth Circuit.

Feb. 5, 1993.

Jerome T. Kearney (June E. Tyhurst, Asst. Federal Public Defender, was on the brief), Asst. Federal Public Defender, for defendant-appellant.

Joe Heaton (M. Jay Farber, Asst. U.S. Atty., Oklahoma City, OK, was with him on the brief), U.S. Atty., for plaintiff-appellee.

Before TACHA and BALDOCK, Circuit Judges, and SAFFELS, Senior District Judge.[*]

TACHA, Circuit Judge.

Defendant-appellant Harlen Ray Evans appeals from a sentence imposed by the district court after he pleaded guilty to one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and affirm in part, reverse in part, and remand for resentencing.

On March 2, 1992, Special Agent Michael Ricker ("Agent Ricker") of the Drug Enforcement Administration, along with a Deputy United States Marshal, arrested Mr. Evans pursuant to a federal warrant. During a search of Mr. Evans's pockets incident to that arrest, the officers found approximately seventy-three grams of methamphetamine.

After informing Mr. Evans of his *Miranda* rights, Agent Ricker invited him to cooperate with the investigation by identifying his source for the methamphetamine. Agent Ricker told him that he would relate the extent of his cooperation to the prosecutors:

> "Look, anything that you do or don't do I'm going to tell the prosecuting attorney. If you assist me, I'm going to tell them for their consideration in the prosecution. If you don't I'm going to tell them that."

Based on this discussion, Mr. Evans eventually identified his source for the methamphetamine and revealed that he had received from this source five or six deliveries of the drug weighing approximately five pounds in total.

Mr. Evans also identified three people to whom he resold the drug and told the officers that one of his customers was arriving shortly to purchase some methamphetamine. Upon Agent Ricker's request, Mr. Evans agreed to pretend that the officers were his friends and proceed with the sale. When the customer arrived, Mr. Evans retrieved his supply of the drug and prepared the quantity and mixture she requested. After arresting the woman, the officers learned that she often resold some of the methamphetamine that Mr. Evans sold to her.

[*] Honorable Dale E. Saffels, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

After Mr. Evans pleaded guilty, the probation officer prepared a Presentence Report that recommended a sentence based on five pounds of methamphetamine rather than seventy-three grams. This increased his base offense level under the United States Sentencing Guidelines ("U.S.S.G.") from 30 to 34. The report also recommended an upward adjustment of two levels pursuant to U.S.S.G. § 3B1.1(c) because Mr. Evans acted as "an organizer, leader, manager, or supervisor" of his three customers.

Mr. Evans objected to the report on the grounds that (1) it took into account information gathered pursuant to a cooperation agreement in violation of U.S.S.G. § 1B1.8(a), and (2) he was not an "organizer, leader, manager, or supervisor" within the meaning of § 3B1.1(c). At the hearing, Agent Ricker testified to the facts above and further stated that although he assumed that Mr. Evans recruited and directed his three customers, he had no evidence of that fact.

█ The district court adopted the recommendations in the Presentence Report and sentenced Mr. Evans to the minimum term of 188 months plus three years of supervised release. On appeal, Mr. Evans renews his two objections to the application of the guidelines. We review the district court's findings of fact underlying the sentence for clear error, *United States v. Mays*, 902 F.2d 1501, 1503 (10th Cir.1990), and review de novo the interpretation of the sentencing guidelines, *United States v. Pinedo–Montoya*, 966 F.2d 591, 595 (10th Cir.1992).

█ Mr. Evans argues that U.S.S.G. § 1B1.8(a) precluded the district court from taking into account information that the officers received after he began to cooperate. Section 1B1.8(a) provides:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that

self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

United States Sentencing Commission, *Guidelines Manual*, § 1B1.8(a) (Nov.1992). Mr. Evans argues that Agent Ricker's statement that "[i]f you assist me I'm going to tell [the prosecutors] for their consideration in the prosecution" constituted an offer from the government to refrain from using self-incriminating information against him. We disagree.

Section 1B1.8(a) requires the existence of two separate agreements before taking effect: (1) the defendant must agree to cooperate with the government "by providing information concerning the unlawful activities of others"; and (2) the government must agree "that self-incriminating information provided pursuant to the agreement will not be used against the defendant." [1] Although the agreement between Mr. Evans and Agent Ricker may satisfy the first requirement, it does not satisfy the second. Agent Ricker's statement was nothing more than an offer to tell the prosecutor that Mr. Evans had cooperated. No reasonable person could construe the statement as a promise not to use self-incriminating information against Mr. Evans. This case is similar to *United States v. Rutledge*, 900 F.2d 1127 (7th Cir.), *cert. denied*, 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990), in which the arresting officer told the defendant that if he cooperated "his cooperation would be helpful to him." *Id.* at 1131. The Seventh Circuit there held that the statement did not constitute an agreement not to use self-incriminating information against the defendant. *Id.; see also United States v. Willard*, 919 F.2d 606, 608 (9th Cir.1990) (quoting district court's finding that statement by agent that "[w]e'd like you to cooperate, and if you do cooperate, we'll make the extent of that cooperation known to the U.S. Attor-

---

1. We express no opinion as to whether an agreement between an arrestee and an officer in the field constitutes an agreement "with the government" as contemplated by § 1B1.8(a). *See Unit-*

*ed States v. Rutledge*, 900 F.2d 1127, 1131–32 (7th Cir.), *cert. denied*, 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990).

ney" was not a § 1B1.8(a) agreement), *cert. denied,* —— U.S. ——, 112 S.Ct. 208, 116 L.Ed.2d 167 (1991). We conclude that there was no agreement not to use self-incriminating evidence.[2]

Mr. Evans also contends that there was insufficient evidence to support an upward adjustment of his base offense level for being "an organizer, leader, manager, or supervisor" under § 3B1.1(c). He notes that there is no evidence that he "exercised any authority, direction or control over his ... customer's resale of the [drug] purchased from him." *United States v. Moore,* 919 F.2d 1471, 1477 (10th Cir.1990). On appeal, the government agrees with Mr. Evans and urges us to remand the case for resentencing without the § 3B1.1(c) adjustment. After reviewing the record, we agree with the parties and remand to the district court with an order to vacate Mr. Evans's sentence and resentence him in a manner consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED with an order to VACATE the sentence and resentence in a manner consistent with this opinion.

---

**2.** Mr. Evans's reliance on our holding in *United States v. Shorteeth,* 887 F.2d 253 (10th Cir.1989), is misplaced. We there held that where the government promised not to institute separate federal prosecutions against the defendant " 'for conduct and acts committed by her related to information she provides the Government during ... debriefings,' " § 1B1.8(a) required the government to expressly state that such information could be used in sentencing. *Id.* at 256. Because the government in this case did not make *any* agreement not to use self-incriminating information, it had no occasion to expressly reserve the right to use the information for sentencing.