**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 23 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

JAMES JUNIOR SPEAR,

        Defendant-Appellant.

Case No. 96-5224

(D.C. 96-CR-64-B)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before ANDERSON, HENRY, and BRISCOE, Circuit Judges.

After examining the briefs and appellate record, this panel has unanimously

determined that oral argument would not materially assist the determination of

this appeal.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore

ordered submitted without oral argument.

James J. Spear pled guilty to a one-count information charging the use of

an interstate facility (the United States Mail) to promote an unlawful activity

(drug trafficking), in violation of 18 U.S.C. § 1952.  He was sentenced to 60

---

[*]      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court generally
disfavors the citation of orders and judgments; nevertheless, an order and judgment may
be cited under the terms and conditions of 10th Cir. R. 36.3.

months' imprisonment, based, in part, on the presentence report's finding that the offense involved 254.57 grams of heroin and 5 grams of cocaine. Mr. Spear appeals the district court's calculation as to the quantity of drugs involved, alleging it was erroneously based on information Mr. Spear offered after he began to cooperate with the government, in violation of U.S. Sentencing Guideline § 1B1.8(a).

We review the district court's factual findings underlying the sentence for clear error, see United States v. Evans, 985 F.2d 497, 499 (10th Cir. 1993), and we review de novo the district court's interpretation of the sentencing guidelines. See id. For the reasons stated herein, we affirm.

## BACKGROUND

Mr. Spear was arrested immediately following the controlled delivery of an Express Mail package containing 13.6 grams of heroin and 5 grams of cocaine. After Mr. Spear was advised of his Miranda rights, Postal Inspector Rey Santiago attempted to obtain a statement from Mr. Spear. Inspector Santiago terminated the interview after Mr. Spear stated that the arresting officers had threatened him. Inspector Santiago stated that Mr. Spear indicated he would like to confer with the Inspector at a later date.

Mr. Spear was held on state charges stemming from the arrest. Three days after the arrest, Inspector Santiago again contacted Mr. Spear for an interview.

Mr. Spear waived his Miranda rights and as yet had not consulted with an attorney.  At this point, no federal charges had been brought against Mr. Spear.

During the interview, Mr. Spear asked for Inspector Santiago's "help," which the Inspector agreed to try to provide.  Rec. vol. III at 68 (testimony of Inspector Santiago).  The Inspector informed Mr. Spear that he "could only help him to an extent of saying that he had cooperated or hadn't cooperated."  Id. at 89.  Specifically, Inspector Santiago informed Mr. Spear that "there are sentencing guidelines within the federal system that can't be bent to a certain degree . . . ."  Id. at 68.  The Inspector further testified that:

> As I explain to everyone who asks me for that type of help, I explained to him that it's not ultimately up to me.  And even if the United States Attorney shown [sic] leniency on him, it would ultimately be up to a judge, . . .  but that his cooperation would be made known.

Id.

Upon receipt of the Inspector's agreement to "help," Mr. Spear informed the Inspector about 17 additional Express Mail packages he had received, each containing at least a ½ ounce quantity of heroin.  Mr. Spear subsequently pled guilty to one count of using the United States Mail to promote an unlawful activity.  In the presentencing report, the amounts from the additional packages (totaling 254.57 grams heroin and 5 grams cocaine) were aggregated to serve as the basis for the drug quantity calculation.  Mr. Spear objected to the use of the

3

additional packages in calculating the quantity of drugs involved in the offense, but the district court overruled his objection. Consequently, Mr. Spear was sentenced based on the presentence report to 60 months' imprisonment.

## DISCUSSION

Mr. Spear, relying on United States Sentencing Guidelines Manual § 1B1.8(a), argues that Inspector Santiago breached the plea agreement by inducing him to supply self-incriminating information. Plea agreements are based on contract principles. "'When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" United States v. Cooper, 70 F.3d 563, 565 (10th Cir. 1995) (quoting Santobello v. New York, 404 U.S. 257, 269 (1971)).

Section 1B1.8(a) provides:

Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

The government on the other hand, relies on our holding in Evans, 985 F.2d at 499, which outlines two separate agreements that must exist before § 1B1.8(a) takes effect: (1) the defendant must agree to cooperate with the government by

4

providing information concerning the unlawful activity of others, and (2) the government must agree that self-incriminating information provided pursuant to the agreement will not be used against the defendant.

Here, it is undisputed the first element is present. Mr. Spear was forthcoming with information involving the unlawful activities of others (and of himself).

The second element, however, is not present in this case. The record is devoid of any evidence that the Inspector agreed that the government would forego the use of self-incriminating evidence provided by Mr. Spear. Rather, the Inspector merely informed Mr. Spear that he would advise the United States Attorney of Mr. Spear's cooperation.

This court has held that such a statement by a law enforcement agent is insufficient to trigger the protections of § 1B1.8(a). See Evans, 985 F.2d at 499. Moreover, the Inspector emphasized to Mr. Spear the rigidity of the sentencing guidelines, further undermining Mr. Spear's claim that the Inspector's words could be construed as a promise not to use Mr. Spear's statements against him. See Rec. vol. III at 88 (Inspector Santiago informed Mr. Spear upon Mr. Spear's request for help "[t]hat if he was prosecuted through the federal system, that it did have sentencing guidelines that [the Inspector] didn't have any control over"). Finally, there is nothing in the record that suggests physical coercion, or that the

5

Inspector threatened Mr. Spear. See id. at 67-71 (testimony of Inspector Santiago); 50-51 (testimony of Mr. Spear).

It is undisputed that the government "is accountable with regard to any promise made to induce a defendant to plead guilty." Cooper, 70 F.3d at 565. Here, however, "[n]o reasonable person could construe the statement as a promise not to use self-incriminating information against" Mr. Spear. Evans, 985 F.2d at 499; see United States v. Rutledge, 900 F.2d 1127, 1131 (7th Cir. 1990) (arresting officer told defendant that if he cooperated "his cooperation would be helpful to him," which did not comprise an agreement not to use self-incriminating information against defendant). Accordingly, we conclude that there was no agreement not to use self-incriminating information against Mr. Spear.[1]

The mandate shall issue forthwith.

Entered for the Court,

Robert H. Henry
Circuit Judge

---

[1] Moreover, the plea agreement itself states:

> No agreements, representations, or understandings have been made between the parties in this case, other than those which are explicitly set for in this plea agreement and none will be entered into unless executed in writing and signed by all the parties.

Aple's Br. at 11 (quoting plea agreement, ¶ F).